UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KRISTIN PHILDIUS,

    Plaintiff,

v.                              Case No.:   2:24-cv-272-SPC-KCD

ALLYOURNEEDS2,
BELOVOTSSEV, CHARHEF18,
COZYROOMSTORE,
DANWILL1427, EL_196802,
HAIPKENT,
HIGHGATE*K03VIEW PROFILE,
HINESBUC-7, IDO2003,
LISSTOKELIS, NEVADA-SHOP,
PL*3J9KVO, SAVANNAH
THRIFT,
SAVYSELECTIONSGIFTS,
SHAMARLAL-15, SHELCO_93,
SMILESHOP1, SUNXIAO50,
TIGERS BEST DEALS,
YOLANSHOP, ZIQIU62,
DAUPANZEES, EASTJING,
KAVELLE HOME INC, LANWEI,
LETS-STORE, PERFECTUS
INPENSAS INC, QUISQUE
ORNARE INC, SHEEYR and
YINGFEI STORE,

    Defendants.

_____/

## **OPINION AND ORDER**

    Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 11).  Only one Defendant responded in opposition to the motion, but Plaintiff

has since settled with that Defendant. (Docs. 48, 49, 51). On May 29, 2024, the Court held a hearing on the motion. The parties were noticed. Only counsel for Plaintiff appeared. For the below reasons, the Court grants the motion.

This case is a copyright infringement case. Plaintiff is an artist known for her seashell sculptures and creations. Her original seashell sculpture and the photographs used to advertise, market, promote, and sell her art are protected by copyright and registered with the Copyright Office (the "Copyrighted Works"):

| Copyright Title and Description | Registration Number | Registration Date |
|---|---|---|
| Sea Glass Christmas Tree (sculpture) | VA 2-220-523 | 10/21/2020 |
| White Sea Shell and Coral Tree (sculpture) | VA 2-261-819 | 04/28/2021 |
| KP Seashell Designs Jan 2020 to Dec 2020 (group of 135 photographs) | VA 2-271-126 | 09/26/2021 |

(Doc. 11-1 at ¶¶ 17, 18; Doc. 11-2).

Plaintiff owns and operates a business, "KP Seashell Designs," and she markets and sells her seashell sculptures and three-dimensional art through her Etsy and business website www.kpseashelldesigns.com. (Doc. 11-1 at ¶ 7). Her display of the Copyrighted Works on her website also included copyright management information ("CMI") in the form of digitally embedded metadata,

various copyright notices as well as visible and invisible watermarks. CMI on the Copyrighted Works include her watermark, KP SEASHELL DESIGNS. (Doc. 11-1 at ¶¶ 21, 22). Plaintiff has never authorized anyone—including Defendants—to advertise, market, promote, use, reproduce, or make reproductions or derivatives of the Copyrighted Works. (*Id*. at ¶¶ 20, 23, 31).

Plaintiff now sues Defendants for willful copyright infringement and piracy. (Doc. 1). She alleges that Defendants, through e-commerce stores operating via Internet marketplace platforms under their seller identification names, have advertised, promoted, offered for sale, or sold goods bearing or using what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or derivatives of Plaintiff's copyrights at issue. Plaintiff knows so because she hired an investigator to investigate the promotion and sale of infringing and counterfeit products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of infringing merchandise through the seller IDs. (Doc. 11-1 at ¶¶ 24-27; Doc. 11-3 at ¶¶ 9, 10). Plaintiff (or someone under her supervision) accessed the e-commerce stores and created detailed web page captures and images of the infringing products of the Copyrighted Works. (Doc. 11-1 at ¶ 30). Test online purchases were made for products bearing or using infringements of the Copyrighted Works, which were shipped to Florida. (*Id*. at ¶¶ 38, 39). Plaintiff (or someone under her supervision) reviewed and visually inspected the

3

products and determined the products were nongenuine, unauthorized versions of her products. (*Id*. at ¶ 39).

The Court previously granted Plaintiff a temporary restraining order enjoining Defendants from engaging in infringing activities and freezing their financial accounts, among other things. (Doc. 14). Plaintiff also moved for an order authorizing alternative service, but the Court denied this relief. (Doc. 21). While Plaintiff figured out service of process for the foreign Defendants, the Court extended the TRO several times. (Docs. 19, 23, 32). Plaintiff has now served Defendants. (Doc. 30). Plaintiff also provided Defendants notice of the preliminary-injunction hearing. (Docs. 36, 45). One Defendant responded in opposition to the motion, but Plaintiff has since settled with that Defendant. (Docs. 48, 49, 51). On May 29, 2024, the Court held a hearing on the motion. Only counsel for Plaintiff appeared.

To obtain a preliminary injunction, Plaintiff must show "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

Plaintiff has shown a likelihood of success on the merits by evidence that she holds valid copyrights for her work and that exact duplicates or

substantially similar designs and images of her Works appear on numerous commercial websites associated with Defendants. (Docs. 10-4 to 10-12; Doc. 11-2); *see also Pronman v. Styles*, 645 F. App'x 870, 873 (11th Cir. 2016) ("To establish a prima facie case for copyright infringement, a plaintiff must show (1) that [she] owns a valid copyright and (2) that the defendant copied constituent elements of the copyrighted work that are original.").

Plaintiff also has shown immediate and irreparable harm will occur unless Defendants are enjoined. Defendants will continue to infringe and engage in other improper conduct. Plaintiff's current and prospective customers will be misled, confused, and disappointed by the quality of products sold by Defendants using the Copyrighted Works, thereby significantly and irreparably damaging Plaintiffs' valuable good will, which is difficult to measure or quantify. *See Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (loss of customers and goodwill constitutes irreparable injury); *Ferrellgas Partners, L.P., v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (irreparable injury includes loss of control of reputation, trade, and goodwill).

Any potential harm to Defendants from this preliminary injunction is outweighed by the potential harm to Plaintiff if relief is not issued. Only one Defendant appeared to argue that the Court's TRO froze funds disproportionate to the funds obtained from allegedly infringing activity. (Doc.

48). Plaintiff has since settled with that Defendant, and there is no other evidence of potential disproportionate harm to Defendants.

And the public interest is served by preliminary relief to protect Plaintiff, protect the public from being defrauded by Defendants' infringing and misleading conduct, and prevent Defendants from profiting from violations of federal and state law. *See TWOWS, LLC v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 8:23-CV-139-WFJ-MRM, 2023 WL 2837693, at *3 (M.D. Fla. Apr. 7, 2023) (the public interest "favors issuance of the temporary restraining order to protect the Plaintiff's copyright interests, to encourage respect for the law, and to protect the public from being defrauded by the illegal sale of infringing goods"); *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1290, 1302 (S.D. Fla. 2016) (holding the public interest is advanced by enforcing compliance with the laws of the United States and the State of Florida).

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Preliminary Injunction (Doc. 11) is **GRANTED** under the terms set forth below.

1. Each remaining Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby

**RESTRAINED and ENJOINED** during the pendency of this case from doing the following:

    a.    manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Copyrighted Works, or any confusingly similar works, other than those actually manufactured or distributed by Plaintiff; and

    b.    secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Copyrighted Works, or any confusingly similar works; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Copyrighted Works, or any confusingly similar works; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

    2.    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Preliminary Injunction shall

immediately discontinue, until further Order of this Court, the use of the Copyrighted Works, or any confusingly similar works, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the seller IDs. This Order is limited to the Defendants' listings using the Copyrighted Works, or any confusingly similar works, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the seller IDs, and does not apply to the Defendants' entire e-commerce stores.

   3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Preliminary Injunction shall immediately discontinue, until further Order of this Court, the use of the Works, or any substantially similar works, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the seller IDs.

4.      Each Defendant shall not transfer ownership of the seller IDs during the pendency of this action, or until further order of the Court.

5.      Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the seller IDs that may have been deleted before the entry of this Order.

6.      Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Payoneer, Inc. ("Payoneer"), Walmart, Inc. ("Walmart"), and their related companies and affiliates shall continue the restraints imposed under the TRO until further Order of this Court and, to the extent not already done, (i) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; (ii) divert those restrained funds to a holding account for the trust of the Court.; (iii) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (iv) identify

all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order;

    7.    Upon receipt of notice of this Preliminary Injunction, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, PayPal, eBay, Payoneer, Walmart, and their related companies and affiliates, shall to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's copyrights; and (iv) the true identities along with complete contact information including email addresses of all defendants.

    8.    The funds restrained by this Preliminary Injunction shall not be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, eBay, Payoneer, Walmart, Wish, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Preliminary Injunction may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, eBay, Etsy, Afterpay, Klarna, Payoneer, Walmart, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Preliminary Injunction may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply only to the remaining Defendants listed on Schedule "A" to the Complaint, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of infringing Plaintiff's Works and/or unfairly competing with Plaintiff.

12. This Preliminary Injunction shall remain in effect during the pendency of this case and until further Order of the Court. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Preliminary Injunction upon notice to Plaintiff pursuant to the Federal Rules of Civil Procedure and Local Rules of the Middle District of Florida.

13. The Court determines that the bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) posted by Plaintiff as evidenced by the Notice of Filing Bond (Doc. 16) is sufficient and shall remain with the Court until a final disposition or until this Preliminary Injunction is dissolved or terminated.

**DONE** and **ORDERED** in Fort Myers, Florida on May 30, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record